UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD TURNBOLM, JR.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Case No. 1:22-cv-1242

Hon. Hala Y. Jarbou

## OPINION

    This is an action seeking judicial review of the Commissioner of Social Security's denial of Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Before the Court is the Report and Recommendation (R&R) recommending that the administrative law judge's (ALJ) decision denying benefits be affirmed (ECF No. 17). Also before the Court are Plaintiff's objections to the R&R (ECF No. 18). For the reasons stated below, the Court will adopt the magistrate judge's R&R and affirm the decision of the Commissioner.

### I. BACKGROUND

    Turnbolm filed a Title II application for disability benefits on March 16, 2020, alleging a disability onset date of April 8, 2019. (Administrative Law Judge (ALJ) Decision 1, ECF No. 6-2, PageID.101.) His application and reconsideration were denied. Thereafter, he filed a request for a hearing, which was held in front of the ALJ on October 6, 2021. (*Id.*)

    In his application and hearing, Turnbolm alleged disabling impairments stemming from an incident where a tree fell on him when he was a freshman in high school. (Social Security

Administration (SSA) Hr'g Tr. 6, ECF No. 6-2, PageID.131.)  That accident caused significant mental and emotional problems which have persisted throughout his adult life.  In addition to his mental difficulties, he also alleged a number of physical impairments, in particular, residual pain and loss of range of motion from a post labral tear of the right shoulder.  In his decision, the ALJ found that Turnbolm suffered from the following "severe" impairments: asthma, labral tear of the right shoulder, tendinitis, depression, traumatic brain injury, and borderline intellectual functioning. (ALJ Decision 4.)  In addition, the ALJ found that Turnbolm had "not engaged in substantial gainful activity since . . . the alleged onset date." (*Id*. at 3.)

Despite these findings, the ALJ concluded that Turnbolm did not meet the threshold requirement to receive either SSI or DIB.  (*Id*. at 4.)  After analyzing the relevant SSA criteria, the ALJ determined that Turnbolm had residual functional capacity (RFC) to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b).  (*Id*. at 9.)  In other words, though the ALJ found that Turnbolm suffered from serious impairments, he concluded that Turnbolm was still able to work.

Turnbolm appealed these findings arguing that: 1) the ALJ did not properly review the issue of whether Turnbolm met part B of Medical Listing 12.05 (concerning mental functioning); 2) the ALJ did not determine an accurate RFC; 3) the ALJ improperly relied on "boiler-plate" language when rendering his decision; and 4) there was new and relevant evidence that would likely materially alter the outcome of the proceedings which came to light after the ALJ's decision. (Pl.'s Br. 14, ECF No. 14.)  The magistrate judge considered each of Turnbolm's arguments and determined that they lacked merit.

## II. STANDARD OF REVIEW

The Court reviews *de novo* portions of the R&R to which a specific objection has been made.  *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 72(b).  General or blanket objections to the R&R

are insufficient. *See Zimmerman v. Cason*, 354 F. App'x 228, 230 (6th Cir. 2009). Such objections defeat the purpose of R&Rs, rendering the "functions of the district court [] effectively duplicated as both the magistrate and the district court perform identical tasks." *Howard v. Sec. of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Therefore, "only specific objections to the magistrate's report made to the district court will be preserved for appellate review." *Id*. (citing *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987)). In conducting its review, the Court "may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge." *Id*.

Under 42 U.S.C. § 405(g), the Court's "review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009)). "If the Commissioner's decision is based on substantial evidence, [the court] must affirm, even if substantial evidence exists in the record supporting a different conclusion." *Id*.

### III. ANALYSIS

Turnbolm objects to the magistrate judge's findings with respect to each of his arguments on appeal. First, he argues that the magistrate judge gave improper weight to portions of the evidence the ALJ used to determine Turnbolm's RFC. Next, he objects to the magistrate judge's finding that there was substantial evidence to support the ALJ's conclusion that Turnbolm did not meet the part B criteria of Medical Listing 12.05, arguing that some of the evidence he relied on was improper and that the ALJ disregarded relevant testimonial evidence. Finally, he objects to the magistrate judge's finding that the "new" evidence which became available in the time after Turnbolm's hearing was insufficient to warrant remanding the case pursuant to Sentence Six of

3

42 U.S.C. § 405(g).  Before addressing each objection, the Court will give an overview of the SSA's disability insurance process.

### A. Disability and the five-step process

In order to qualify for disability insurance benefits, "an individual must be under a disability within the meaning of the Social Security Act." *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical *or* mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).  "'[T]o be found disabled,' a claimant's impairments 'must not only prevent' the claimant from doing her previous work, but they 'must also render the claimant unable to engage in any other kind of work that exists in significant numbers in the national economy.'"  *Sorrell v. Comm'r of Soc. Sec.*, 656 F.App'x 162, 169 (6th Cir. 2016) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

"The SSA has established a five-step evaluation process for determining whether an individual is disabled."  *Rabbers*, 582 F.3d at 652.  "If the claimant is found to be conclusively disabled or not disabled at any step, the inquiry ends at that step." *Id*.  The five steps are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652.

> This process includes a burden-shifting analysis. In steps one through four, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work. However, in step five, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile.

*Sorrell*, 656 F. App'x at 169.

Here, as previously noted, though the ALJ found that Turnbolm suffered from severe impairments, he concluded that those "impairments, considered singly and in combination, do not meet the criteria of any listed impairments described in Appendix 1 of the Regulations." (ALJ Decision 4.) Therefore, he denied Turnbolm's claim at step 3, finding that he had the RFC to perform substantial gainful activity ("SGA").

**B. There was substantial evidence to support the ALJ's RFC findings**

The magistrate judge analyzed the ALJ's process in calculating Turnbolm's RFC and concluded that the RFC determination was supported by substantial evidence. (R&R 12.) The magistrate summed up Turnbolm's argument for relief as "simply that the ALJ should have weighed and evaluated the evidence differently." (*Id*.) The Court agrees with the magistrate judge's summation. Now, Turnbolm objects to the magistrate's findings with largely the same argument: that the ALJ did not properly calculate Turnbolm's RFC because he weighed the evidence incorrectly. Since the magistrate judge already considered and rejected that argument, the Court will not duplicate that analysis here.

Turnbolm does, however, also allege specific error on the part of the magistrate judge. He argues that the magistrate judge failed to consider a trio of cases that purportedly show how the

5

ALJ in this case misconstrued crucial evidence. (Pl.'s Objs. 2.) First, he cites *Shelley C. v. Commissioner of Social Security Administration*, 61 F.4th 341 (4th Cir. 2023). In *Shelley C.*, the Fourth Circuit Court of Appeals reversed an ALJ's decision denying disability insurance benefits to a woman who suffered from chronic depression. *Id.* at 359. The court in *Shelley C.* found that the ALJ had committed reversable error by failing to credit the opinion and notes of the plaintiff's treating physician of twenty years, instead relying almost exclusively on the medical opinions of non-examining and non-treating physicians. *Id.* Turnbolm asserts that "*Shelley C.* provides a virtual laundry list of the improper ways that ALJs can (and are) misconstruing evidence," and that this ALJ's decision contains many of the same errors laid out in *Shelley C.* (Pl.'s Objs. 2.) However, Turnbolm's reliance on *Shelley C.* is misplaced because the crux of that opinion concerned the treating physician rule which is not at issue here as Turnbolm readily concedes. (*See* Pl.'s Br. on Appeal 15, ECF No. 14) (admitting that there is no "significant issue of a treating physician opinion in this case"). Even if the parallels were more compelling, *Shelley C.* is a Fourth Circuit case and therefore has no controlling weight in this Circuit.

Next, Turnbolm cites *Gayheart v. Commissioner of Social Security*, 710 F.3d 365 (6th Cir. 2013). Like the ALJ in *Shelley C.*, the ALJ in *Gayheart* was tasked with evaluating the credibility and persuasiveness of competing medical opinions. Turnbolm asserts that *Gayheart* stands for the principle that "relying on a plaintiff's occasional living activities that a person is not disabled is not proper." (Pl.'s Objs. 2.) The court in *Gayheart* never made such a blanket statement, rather it held that evidence of occasional activities alone was not sufficient to contradict a medical opinion that supported a finding of disability. *Gayheart*, 710 F.3d at 377. The court explained that the question was not whether the plaintiff could at times perform various activities, but whether he "could do any of these activities on *a sustained basis*, which is how the functional limitations of

6

medical impairments are to be assessed." *Id*. (emphasis in original). The ALJ found that Turnbolm had not met *his burden* of showing an impairment that satisfied the requirements of 20 CFR Part 404 Subpart P, Appendix 1, noting,

> In this case, . . . in section B, these requirements are not met because the claimant was able to undergo and complete the standardized testing at the consultative examination. He further noted he was able to clean the house, play video games, and watch television. Additionally, in the function reports, the claimant was able to help care for her [sic] daughter and pets. He could prepare simple meals daily. He could perform light household chores. He was able to count change. The claimant was able to go outside daily. He was able to ride in a car. When he went out alone, he was able to go out alone. He was able to go shopping in stores. The claimant was able to engage in social activities. The claimant got along with authority figures well. The claimant had never been laid off from a job due to problems getting along with others.[1]

(ALJ Decision 8.) Here, unlike in *Gayheart*, the ALJ was not using these examples of activities that Turnbolm could perform to contradict medical testimony that supported a finding of disability. Rather, he was listing these activities as part of the evidence that comports with the prepared function reports to contradict and supplement Turnbolm's own hearing testimony. (*See id*. at 6 ("At the hearing, the claimant testified he had difficulty concentrating, noting he had periods of zoning out . . . [h]owever in the function reports, the claimant was able to help care for [his] daughter and pets. He could prepare simple meals *daily* . . .").) The lack of a supporting medical opinion renders this case fundamentally different from *Gayheart* and *Shelley C*.

Finally, Turnbolm cites *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), an out-of-circuit case in which the court found that the ALJ's opinion "failed to build a bridge between the medical evidence (along with [plaintiff's consistent] testimony . . . ) and the conclusion that [plaintiff] is able to work." *Id*. at 649. *Bjornson* concerned a purely physical impairment, and the tension in

---

[1] Turnbolm takes specific issue with the ALJ's statement that he "was able to ride in a car." Granted, it is not clear how being able to ride in a car is relevant to RFC, however, that is only one of a list of activities compiled by the ALJ. One unclear statement does not take away from the fact that the ALJ found Turnbolm was able to engage in several sustained activities that evidenced an ability to perform SGA.

7

that case was once again over competing medical findings. Here, there is no such tension. On one hand the ALJ considered Turnbolm's hearing testimony, and on the other his own findings based on the record including medical reports prepared for the purpose of evaluating his condition. (*See* Psychiatric/Psychological Medical Rep. ECF No. 6-9, PageID.725-729.) *Bjornson*'s central holding – that there must be a bridge between the medical evidence and testimony and the ability to work – is a different way of saying that the ALJ's RFC determination must be based on substantial evidence. The R&R found that it was, and the Court agrees.

**C. The ALJ relied on substantial evidence in determining that Turnbolm did not meet the B criteria of Medical Listing 12.05**

In order to qualify for disabilities based on a mental impairment, the claimant must satisfy one of parts A, B, or C criteria of Medical Listing 12.05. Listing 12.05 provides as follows:

12.05 Intellectual disorder, satisfied by A or B:

A. Satisfied by 1, 2, and 3:

1. Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2. Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3. The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

OR

B. Satisfied by 1, 2, and 3:

1. Significantly subaverage general intellectual functioning evidenced by a or b:

a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or

b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2. Significant deficits in adaptive functioning currently manifested by

extreme limitation1 of one, or marked limitation of two, of the following

areas of mental functioning:

a. Understand, remember, or apply information; or

b. Interact with others; or

c. Concentrate, persist, or maintain pace; or

d. Adapt or manage oneself; and

3. The evidence about your current intellectual and adaptive functioning

and about the history of your disorder demonstrates or supports the

conclusion that the disorder began prior to your attainment of age 22.

20 C.F.R. Part 404, Subpart P, Appendix B § 12.05.  Turnbolm argues that his condition satisfied the part B criteria.  Specifically, that the ALJ incorrectly determined that he did not meet the factors laid out in (B)(2)(a)-(d).  However, both the R&R and Turnbolm fail to acknowledge that the ALJ first found that the basic requirements of part (B)(1)(b) were not met, meaning that whether or not his condition satisfied the (B)(2)(a)-(d) factors, Turnbolm would nevertheless fail to qualify for benefits under the part B criteria of the medical listing.  (ALJ Decision 8.)  The (B)(1) criteria, which is a necessary predicate for consideration of the (B)(2) factors, states that a claimant must have "a full scale (or comparable) IQ score of 71–75 *accompanied by* a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence[.]"  20 C.F.R. Part 404, Subpart P, Appendix B § 12.05 (emphasis added).

9

Turnbolm's full-scale IQ score was 73, falling within the range of 71-75, however, he had "a verbal comprehension score of 78; a perceptual reasoning score of 84; a processing speed of 76; and a general abilities index of 79." (ALJ Decision 8.)  None of Turnbolm's other scores qualify because they are all above 70.  Therefore, he does not satisfy the part B criteria of the medical listing and his arguments are moot.

However, since both the R&R and the ALJ conducted separate analyses of the part (B)(2)(a)-(d) factors, the Court will consider Turnbolm's objections.  The ALJ found that Turnbolm's mental functioning was not sufficiently limited in the four areas identified above to warrant disability benefits because:

> The claimant was able to undergo and complete the standardized testing at the consultative examination.  He further noted he was able to clean the house, play video games, and watch television.  Additionally in the function reports, the claimant was able to help care for her [sic] daughter and pets.  He could prepare simple meals daily.  He could perform light household chores.  He was able to count change.  The claimant was able to go outside daily.  He was able to ride in a car.  When he went out alone, he was able to go out alone.  He was able to go shopping in stores.  The claimant was able to engage in social activities.  The claimant got along with authority figures well.  The claimant had never been laid off from a job due to problems getting along with others.

(ALJ Decision at 7-8.)

The magistrate judge agreed with the ALJ's conclusion about the factors in (B)(2)(a)-(d) and held that there was a substantial basis for his decision to exclude Turnbolm from coverage under the part (B)(2) criteria.  (R&R 7-10.)  In his objections, Turnbolm argues that the magistrate judge ignored relevant caselaw when reaching his conclusion that the ALJ's decision was based on substantial evidence.  He first argues that using Turnbolm's ability to complete the cognitive tests as a factor that weighed against a finding of disability was improper.  He also argues that the ALJ's finding that Turnbolm could perform simple arithmetic was inconsistent with the evidence in the record.

10

Turnbolm points to three cases that he says the magistrate failed to contend with when conducting his analysis of the ALJ's decision. The first is *Birdsell v. Commissioner of Social Security*, 1:116-cv-1390, 2017 WL 6616616 (W.D. Mich. Dec. 28, 2017), an unpublished case from this district that concerned an ALJ's improper credibility assessment. *Id*. at *9. According to Turnbolm, *Birdsell* stands for the principle that, "occasional attempts to perform activities in no way cause a claimant's allegations of disability to be suspect." (Pl.'s Objs. 3.) When it expressed that sentiment, the court in *Birdsell* was discussing the ALJ's reliance on Birdsell's sporadic attempts to go fishing with his wife to discredit the testimony he gave about his disability. *See Birdsell*, 2017 WL 6616616, at *8. It concluded that "the fact that Plaintiff is able to perform a limited range of activity for short periods of time is not inconsistent with a claim of disability." *Id*. As previously discussed, the ALJ relied on a variety of activities, some of which Turnbolm conducted daily, to find that he had the ability to work. He did not use one occasional activity to discredit all of Turnbolm's testimony, as Turnbolm suggests.

Next, Turnbolm relies on *Pine v. Berryhill*, 1:16-cv-00210, slip op. (D. Haw., Apr. 5, 2017); there, the court stated that "[p]laintiff's ability to act appropriately and cooperate and respond in a psychological evaluation does not necessarily correspond with her ability to maintain regular full-time employment." *Id*. at 16. *Pine* does not state that a claimant's performance and attentiveness at evaluations is irrelevant, only that it is not dispositive. This statement is entirely consistent with the decision in this case. Even if it were not, *Pine* is an unpublished district court case from the Ninth Circuit and therefore is not controlling.

Finally, Turnbolm cites *Wanswerski v. Colvin*, 1:14-cv-01033, slip op. (S.D. Ind. Sept. 28, 2017), another unpublished case out of Indiana that concerned the ALJ's credibility assessment of a woman applying for disability benefits for severe migraine headaches. In *Wanswerski*, the

11

plaintiff argued that the fact that she seemed comfortable and "in no acute distress" at a medical appointment was not inconsistent with her claim of disability for debilitating headaches which were not constant. *Id*. at 25. The court disagreed with Wanswerski, holding that "an ALJ is entitled to consider a claimant's demeanor at an examination in her credibility determination." *Id*. at 26. *Wanswerski* therefore stands for the opposite proposition that Turnbolm cites it for.

Finally, Turnbolm argues that the ALJ's assessment of his arithmetic abilities was incorrect and inconsistent with the record, a fact that he says the magistrate judge ignored. Turnbolm's contention is that the ALJ wrongly held he could perform simple arithmetic when "the consultative examination report showed that Plaintiff could [not] perform serial 7s or serial 3s." (Pl.'s Objs. 3.) Serial 7s and 3s are tests which ask the examinee to count backwards from 100 by orders of 7 or 3 (i.e., $100 - 7 = 93 - 7 = 86 - 7 = 79$, etc. . . .). True, the report did show that Turnbolm could not perform serial 7s or 3s (*see* Psychiatric/Psychological Medical Rep. 4) however, it also found that he was able to accurately perform five single-digit calculations involving multiplication and division as well as addition and subtraction. (*Id*.) The ALJ said that Turnbolm could perform "simple arithmetic," a statement that is substantially supported by these findings, although reasonable minds might quibble over whether performance on serial 7s or serial 3s is more indicative of basic arithmetic abilities.

**D. Despite the hearing testimony, the ALJ based his decision on substantial evidence**

Turnbolm also objects that the R&R did not consider how his hearing testimony contradicted the ALJ's findings. (Pl.'s Objs. 4.) Fundamentally, he is arguing that the ALJ did not correctly weigh his hearing testimony when calculating his RFC. However, absent any clear procedural or evidentiary errors, the Court will not substitute its credibility or evidentiary judgments with that of the ALJ. As previously discussed, the Court's "review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was

12

made pursuant to proper legal standards." *Ealy*, 594 F.3d at 512. Here, some of Turnbolm's testimony, and that of his relatives and friends, may weigh in favor of a finding of a disability, but the ALJ also considered function reports, medical evidence, psychological reports, and portions of his own testimony which weighed in the other direction. Further, the ALJ's decision is not entirely inconsistent with Turnbolm's testimony because the ALJ acknowledged that Turnbolm suffered from "asthma; status post labral tear of the right shoulder; tendinitis; asthma; depression; traumatic brain injury; and borderline intellectual functioning." (ALJ Decision 4.) The disagreement is over how these impairments affected Turnbolm's RFC. The ALJ concluded that he is still capable of light work; Turnbolm disagrees. The ALJ's decision not to weigh the testimony of Turnbolm and his friends and family more heavily is not a reversable error. *See Jones*, 336 F.3d at 477 (holding that "an ALJ is not required to accept a claimant's subjective complaints").

### E. Turnbolm fails to carry his burden of showing that the "new evidence" is material

Finally, Turnbolm objects to the magistrate judge's findings that the "new evidence" he submitted to the Appeals Council, but not to the ALJ, was material. Normally, district courts are precluded from considering evidence that was presented for the first time to the Appeals Council when the Council declines to review the case. *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). However, if a claimant can demonstrate the new evidence is material and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for consideration of the new evidence. *Sizemore v. Sec. of Health & Hum. Servs*, 865 F.2d 709, 711 (6th Cir. 1988). A plaintiff can satisfy the materiality prong by showing that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Id*.

The magistrate judge first found that Turnbolm had waived his ability to request a remand based on new evidence because he failed to present an argument as to either why the new evidence

13

had not been presented to the ALJ or why it was material. (R&R 13-14.) Despite concluding that the argument was waived, the magistrate judge still considered the materiality of the evidence and determined that it was unreasonable to argue that "consideration of th[e] evidence would have resulted in a different outcome." (*Id*. at 14.) Turnbolm argues that the magistrate judge incorrectly determined that the argument was waived and that the evidence of Turnbolm's post-hearing mental health events were material to his disability claim.

Despite the R&R's statement that Turnbolm needed to present a sufficient argument as to why the new evidence is material, he does not elaborate on this in his objection. The only statement he makes with regard to materiality is that the evidence is relevant because it shows "the deterioration of his condition . . . [and] provide[s] a direct contradiction to the ALJ's assertion that his treatment had been nothing more than 'conservative.'" (Pl.'s Objs. 5.) However, he does not explain *how* the evidence shows these things or why it is material to the ALJ's decision. In other words, Turnbolm does not show why, had the ALJ considered this evidence, the outcome of the proceedings might have been different. Instead, he states that "[o]ne would think that evidence of such post-hearing issues would be obvious in its relevance." (*Id*.) According to Turnbolm, these new records show that "Plaintiff was in trouble with the law and also was literally taken to the hospital by his therapist." (Pl.'s Objs. 5.) However, he does not cite to the portions of the record that allegedly show these things. After reviewing the records, it appears that Turnbolm was hospitalized from October 26 to November 1, 2021, after reporting thoughts of suicide. (Psychiatric Evaluation, ECF No. 6-3, PageID.49.) He was also charged with malicious destruction of property for allegedly smashing a car's side mirror while walking home drunk from a bar. (Psychiatric Evaluation, ECF No. 6-2, PageID.33.) While the suicidal ideation and hospitalization are serious, the subsequent records show improvement rather than deterioration in

14

his mental status since then. As of the most recent record, the case manager reports that Turnbolm seems to be "at his baseline." (Psychiatric Evaluation, ECF No. 6-2, PageID.28.) As for the destruction of property charge, Turnbolm denied to the police that he was responsible, so he can hardly argue that this act is indicative of deterioration in his mental condition. (*See* Psychiatric Report, ECF No. 6-2, PageID.32.) Since Turnbolm does not elaborate further on his claims, the Court finds that Turnbolm has not met his burden of showing that the new evidence would likely have resulted in a different outcome.

## IV. CONCLUSION

For the reasons stated above, the Court will adopt the magistrate judge's Report and Recommendation. The decision of the Commissioner of Social Security will be affirmed. The Court will enter an order consistent with this Opinion.

Dated: February 2, 2024               /s/ Hala Y. Jarbou
                                       HALA Y. JARBOU
                                       CHIEF UNITED STATES DISTRICT JUDGE